## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| SHANNON E. DILDINE, ) | Civil Action No.: 2:16-cv-01822-DCN-MGB |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | **Wrongful Termination in Violation** |
| ) | **of Public Policy; Violation of** |
| CITY OF NORTH CHARLESTON, ) | **Title VII - Termination Based upon Race;** |
| KEITH SUMMEY, both individually and ) | **Violation of §1981 - Termination Based** |
| in his official capacity as Mayor of the ) | **upon Race; Violation of 42 U.S.C. §1983** |
| City of North Charleston, and ) | |
| EDDIE DRIGGERS, both individually and ) | |
| in his official capacity as the Chief of ) | |
| Police for the City of North Charleston, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |
| _____) | |

The plaintiff above named, complaining of the acts of the above-named defendants, states as follows:

### PARTIES AND JURISDICTION

1. That the plaintiff is a citizen and resident of the County of Colleton, State of South Carolina.

2. That, upon information and belief, the defendant City of North Charleston, South Carolina ("North Charleston" or "defendant"), is a governmental entity and/or municipal corporation doing business and maintaining offices and agents in the County of Charleston, State of South Carolina.

3. That, upon information and belief, the defendant Keith Summey ("Summey" or "defendant") is the Mayor of the defendant North Charleston and is a citizen and resident of the County of Charleston, State of South Carolina. Said defendant is being sued both in his individual and in his official capacity.

1

4.     That, upon information and belief, the defendant Eddie Driggers ("Driggers" or "defendant") is the Chief of Police for the defendant North Charleston and is a citizen and resident of the County of Charleston, State of South Carolina. Said defendant is being sued both in his individual and in his official capacity.

5.     That this court has federal question jurisdiction pursuant to 42 U.S.C. §2000e-2, 42 U.S.C. §2000e-5 ("Title VII"), 42 U.S.C. §1981, 42 U.S.C. §1983, and 28 U.S.C. §1331.

6.     That venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division, in that pursuant to 28 U.S.C. §1391(b), the parties reside and do business in this district, and a substantial part of the events giving rise to plaintiff's claims occurred here.

## CONDITIONS PRECEDENT

7.     That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of his Title VII action, all of which are more fully described below. Moreover, at all relevant times as defined by Title VII, defendant North Charleston employed fifteen (15) or more employees. As such, defendant North Charleston is an "employer" as defined by Title VII and otherwise is subject to that Act.

8.     That on or about March 1, 2016, and as result of defendants' discriminatory conduct, all of which is more fully described below, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon race.

9.     That on or about March 16, 2016, plaintiff received his Notice of Right to Sue from the EEOC regarding the complaint described above in Paragraph 8.

10.     That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which he received his Notice of Right to Sue described above in Paragraph 9.

**FACTS**

11. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 10 hereinabove as fully as if set forth verbatim.

12. That plaintiff is a Caucasian male.

13. That on or about November 11, 1996, defendant North Charleston hired plaintiff as a police officer.

14. That in or around 1999, plaintiff became a Drug Enforcement Detective in the Narcotics Unit at defendant North Charleston; in or around 2002 plaintiff became a Field and Training Officer at defendant North Charleston where he trained other officers; in or around 2005 plaintiff was transferred back to his position as a Drug Enforcement Detective; and, in or around 2007 plaintiff was transferred back to a Uniformed Patrolman position where he again trained other police officers.

15. That in or around 2008 defendant North Charleston promoted plaintiff to the rank of Corporal; and, in or around 2010 plaintiff was promoted to the rank of Sergeant.

16. That as a Uniformed Patrol Sergeant, plaintiff reported to Lieutenant Brian Adams ("Adams"). Adams reported to Captain Joe Stephens ("Stephens"). Stephens, in turn, reported to Deputy Chief Scott Deckard ("Deckard") and Deckard reported to the Chief of Police, the defendant Driggers. Driggers reported to the Mayor, defendant Summey.

17. That plaintiff had an esteemed and exemplary career at defendant North Charleston that spanned 18½ years. To this end, plaintiff routinely received satisfactory to above-satisfactory performance evaluations at defendant North Charleston; he received regular pay raises and promotions there; his record with the South Carolina Criminal Justice Academy shows certification for hundreds of hours of training and no complaints; and, plaintiff was only formally disciplined one (1) time in 18½ years of employment for a minor incident that occurred

during his first or second year of employment at said defendant - an alleged offense that has since been purged from plaintiff's employment file.

18. That as the above indicates, plaintiff performed his job duties at defendant North Charleston in a satisfactory fashion and otherwise maintained an excellent employment record there. Plaintiff loved his job as a police officer at defendant North Charleston and took great pride in it. Being a police officer with said defendant was plaintiff's "entire world." Moreover, plaintiff grew up in North Charleston, South Carolina and went to school and was friends with many officers in his chain of command, including those officers identified in Paragraph 16 above.

19. That being born and raised in the Southern United States, plaintiff did not believe the Confederate flag was a symbol of hate. Instead, he believed it symbolized opposition to bigger or intrusive government. Plaintiff is not in any shape or form a racist and he does not belong to any organization that advocates racism or any such hateful, divisive viewpoints.

20. That in or around mid-June of 2015, plaintiff took a week or two off of work to go on a family vacation in the mountains.

21. That plaintiff was on said vacation during the June 17, 2015 mass-shooting and murders at the Emanuel AME church in downtown Charleston, South Carolina.

22. That thereafter, a heated debate arose in the State of South Carolina regarding whether to remove the Confederate flag from the Statehouse in Columbia, South Carolina.

23. That when plaintiff returned from his vacation, he was aware of the mass-shooting and the flag debate, but was unaware that pictures had surfaced showing the accused shooter at the Emanuel AME Church draped in a Confederate flag prior to the shootings.

Plaintiff was also unaware the defendant Summey had just held a press conference voicing his support for removal of the Confederate flag from the Statehouse.

24. That on or about the evening of June 22, 2015 (shortly after plaintiff returned from his family vacation) plaintiff posted a picture of himself on Facebook wearing shorts or underwear that had the design of the Confederate flag on them. Plaintiff posted the picture to diffuse a debate that two of his Facebook friends were having over the Confederate flag issue. Plaintiff posted the picture under an alias name on his private Facebook account and did not in any way associate himself or the shorts with the City of North Charleston. Otherwise, the Facebook posting contained no other language or remarks. A true and correct copy of said picture is attached hereto as Exhibit 1.

25. That the following day, on or about June 23, 2015, Sergeant Heather Walker telephoned plaintiff at home and advised him that his post had been discovered by the police department and that plaintiff needed to come to the department to discuss it.

26. That plaintiff had forgotten that he even posted the picture and deleted it immediately.

27. That day (on or about June 23, 2015) plaintiff was summoned to a meeting in a conference room at City Hall, attended by the following persons: plaintiff, Captain Stephens, Deputy Chief Deckard, Deputy Chief Reggie Burgess ("Burgess"), and Julie Elmore ("Elmore"), the Special Assistant to the Mayor.

28. That during the meeting Elmore did most of the talking stating, among other things, that she (and Summey) were concerned over how the issue would be handled once the media got involved and that she (and the Mayor) knew plaintiff was not a racist. Moreover, those present discussed that approximately one (1) week prior to plaintiff's Facebook posting, Chief Deputy Burgess (who is African-American) had posed in a photograph with the local

5

leaders of the Black Lives Matter movement and that the photograph had been published in a local newspaper and/or online. One of the persons photographed along with Burgess was wearing a t-shirt that stated "Black Lives Matter." The letter "i" in the word "lives" was substituted with a raised fist. Another African-American female in the photograph had pictures of Trayvon Martin on her shirt, a can of Arizona tea around her neck, and a package of Skittles attached to her shirt - presumably in protest over the Trayvon Martin shooting in Florida. During the discussion, Elmore remarked that Burgess' situation was similar to plaintiff's. A true and correct copy of said photograph is attached hereto as Exhibit 2. Otherwise, plaintiff was upset at the meeting because he realized that he was going to be terminated.

29. That on or about June 24, 2015, Chief Driggers, Deputy Chief Burgess, Deputy Chief Deckard and Lieutenant Gomez visited plaintiff's home and delivered a termination notice to plaintiff. That defendants Summey and Burgess made the decision to terminate plaintiff.

30. That the termination notice stated that plaintiff was terminated because of the picture he posted of himself on Facebook wearing the Confederate flag shorts.

31. That defendant Summey was running for re-election for the Mayor's office and the election was to take place in the fall of 2015.

32. That Deputy Chief Burgess was not disciplined or fired for being photographed with Black Lives Matters leaders and/or protesters.

**FOR A FIRST CAUSE OF ACTION
AGAINST DEFENDANT NORTH CHARLESTON:
WRONGFUL TERMINATION
IN VIOLATION OF PUBLIC POLICY**

33. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 32 hereinabove as fully as if set forth verbatim.

34. That there is a clear and strong mandate of public policy in this state, by and through *S.C. Code Ann.* § 16-17-560, that an employer shall not discharge a citizen from employment because of political opinions or the exercise of political rights and privileges guaranteed by the South Carolina Constitution.

35. That plaintiff expressed a political opinion and/or exercised his political rights and privileges by posting a picture of himself on his private Facebook page wearing shorts that contained an emblem of the Confederate flag.

36. That defendant violated the clear and strong mandate of public policy referred to above in Paragraph 35 by terminating plaintiff from at-will employment because plaintiff expressed his political opinions and because plaintiff exercised his political rights and privileges guaranteed to him by the South Carolina Constitution.

37. That as a direct result of the above violations, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, post-traumatic stress disorder, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks the costs and disbursements of this action and prejudgment interest.

**FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANT NORTH CHARLESTON:
VIOLATION OF TITLE VII
RACE DISCRIMINATION
(TERMINATION)**

38. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 37 hereinabove as fully as if set forth verbatim.

39. That at all relevant times as defined by Title VII, said defendant employed fifteen (15) or more employees and, thus, is covered by and otherwise subject to Title VII.

40. That plaintiff is Caucasian.

41. That at all times plaintiff performed his job duties at defendant North Charleston in a manner that met said defendant's legitimate expectations.

42. That said defendant terminated plaintiff.

43. That defendant terminated plaintiff under circumstances that give rise to an inference of race discrimination - namely, defendant did not terminate similarly situated African-American employees who engaged in the same alleged (or similar) behavior as plaintiff and/or plaintiff was fired for posting a private picture of himself on Facebook wearing clothing that contained a Confederate flag - a symbol associated with Caucasians (although plaintiff took the flag to be a symbol against oppressive governments).

44. That alternatively, defendant replaced plaintiff with someone outside of plaintiff's protected class and/or the position remained open.

45. That defendant terminated plaintiff because of plaintiff's race and, therefore, defendant has purposefully violated Title VII.

46. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, post-traumatic stress disorder, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

**FOR A THIRD CAUSE OF ACTION
AGAINST DEFENDANT NORTH CHARLESTON:
VIOLATION OF 42 U.S.C. §1981
RACE DISCRIMINATION
(TERMINATION)**

47. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 46 hereinabove as fully as if set forth verbatim.

48. That plaintiff is Caucasian.

49. That at all times plaintiff performed his job duties at defendant North Charleston in a manner that met said defendant's legitimate expectations.

50. That defendant terminated plaintiff.

51. That defendant terminated plaintiff under circumstances that give rise to an inference of race discrimination - namely, defendant did not terminate similarly situated African-American employees who engaged in the same alleged (or similar) behavior as plaintiff and/or plaintiff was fired for posting a private picture of himself on Facebook wearing clothing that contained a Confederate flag - a symbol often associated with Caucasians (although plaintiff believed the flag was a symbol against oppressive government).

52. That alternatively, defendant replaced plaintiff with someone outside of plaintiff's protected class and/or the position remained open.

53. That defendant terminated plaintiff because of plaintiff's race and thereby purposefully violated 42 U.S.C. §1981 by impairing the terms of plaintiff's employment contract with defendant, including, but not limited to, the making, performance, modification and termination of said contract and the enjoyment of all benefits, privileges, terms and conditions of the said contractual relationship.

54. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work,

9

severe psychological harm, emotional distress, anxiety, depression, post-traumatic stress disorder, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

**FOR A FOURTH CAUSE OF ACTION
AGAINST DEFENDANT NORTH CHARLESTON
AND AGAINST DEFENDANTS SUMMEY AND
DRIGGERS IN THEIR OFFICIAL
AND INDIVIDUAL CAPACITIES:
VIOLATION OF 42 U.S.C. §1983**

55. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 54 hereinabove as fully as if set forth verbatim.

56. That plaintiff engaged in speech or protected activity which related to a matter of public concern - namely, plaintiff displayed a picture of himself on his Facebook page wearing shorts that contained an emblem of the Confederate flag.

57. That plaintiff's interest in his First Amendment expression outweighed defendants' interest in the efficient operation of the workplace. Moreover, plaintiff's exercise of his free speech rights did not disrupt or interfere with the operation of the workplace at defendant North Charleston.

58. That defendants terminated plaintiff for engaging in free and protected speech. Specifically, defendants terminated plaintiff because plaintiff exercised his First Amendment rights guaranteed to him by the South Carolina and United States Constitutions.

59. That in so terminating plaintiff, defendants have intentionally and willfully deprived plaintiff of his rights, privileges and/or immunities secured under color of law and the Constitutions and laws of this state and country, and thereby violated 42 U.S.C. §1983.

60. That defendant North Charleston and defendants Summey and Driggers are liable in their official capacities as an official policy or custom existed that was attributable to defendants; said policy or custom proximately caused the deprivation of plaintiff's Constitutional right - freedom of speech; and, defendants acted with deliberate indifference in violating plaintiff's rights.

61. That moreover, defendants Summey and Driggers are liable in their individual capacities as the First Amendment rights of plaintiff, which defendants violated, were clearly established rights; defendants Summey and Driggers made the decision to terminate plaintiff (and had personal involvement in said decision); said defendants caused the deprivation of plaintiff's rights; and, said defendants did so acting with deliberate indifference to plaintiff's protected rights.

62. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, post-traumatic stress disorder, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, punitive damages (against the individual defendants in their individual capacities), and further seeks attorney's fees and costs and prejudgment interest.

63. That in acting in their individual capacities, defendants Summey and Driggers acted intentionally, willfully, recklessly, and with callous indifference to plaintiff's federally protected rights and, therefore, plaintiff is entitled to recover punitive damages from said defendants.

WHEREFORE, plaintiff prays for the following relief against defendants:

(a) As to plaintiff's First Cause of Action, for such an amount of actual and special damages as the trier of fact may find (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, post-traumatic stress disorder, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), the costs and disbursements of this action, prejudgment interest, and for such other and further relief as the court deems just and proper;

(b) As to plaintiff's Second and Third Causes of Action, for such an amount of actual and special damages as the trier of fact may find (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, post-traumatic stress disorder, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), the costs and disbursements of this action, including reasonable attorney's fees, prejudgment interest, and for such other and further relief as the court deems just and proper;

(c) As to plaintiff's Fourth Cause of Action, for such an amount of actual and special damages as the trier of fact may find (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, post-traumatic stress disorder, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages (against the individual defendants in their individual capacities), the costs and disbursements of

this action, including reasonable attorney's fees, prejudgment interest, and for such other and further relief as the court deems just and proper.

                              HITCHCOCK & POTTS

                              By: <u>*s/A. Christopher Potts*</u>
                              Federal ID No.:  5517
                              31 Broad Street (P.O. Box 1113)
                              Charleston, SC 29401 (29402)
                              Telephone:  (843) 577-5000
                              Fax:  (843) 722-8512
                              E-Mail:  hitchp@bellsouth.net
                              ***Attorneys for the Plaintiff***

Charleston, South Carolina
June 6, 2016